Ronald Leroy SCHUEMANN,
Petitioner-Appellant,

v.

COLORADO STATE BOARD OF ADULT
PAROLE; J. D. MacFarlane,
Respondent-Appellee.

No. 79–1483.

United States Court of Appeals,
Tenth Circuit.

Submitted June 20, 1980.

Decided June 30, 1980.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal from a judgment denying Schuemann's petition for a writ of habeas corpus. Schuemann is currently confined in the Colorado State Penitentiary. He was denied parole by the Colorado State Board of Adult Parole (Board) in October 1978. Schuemann did not seek review of the Board's action at the state level, but instead filed this petition for a writ of habeas corpus in federal district court. The petition alleges denial of due process in that:

1. The Board has not established or followed any meaningful criteria for granting parole;

2. The Board's stated reasons for denial of parole are unconstitutionally vague, inadequate and not supported by the record;

3. The Board considered information and allegations stemming from an invalid conviction;

4. Schuemann was denied access to his parole file;

5. The tape recorded record of the hearing is incomplete because the tape was changed without stopping the proceedings;

6. There is no avenue of appeal from the Board's decision; and

7. Schuemann was denied protection from double jeopardy because the Board's decision frustrated the sentencing court's intent.

 The district court concluded on the merits that Schuemann was not entitled to relief. We are in general accord with the opinion of the district court. We agree, first, that there are no state remedies available to Schuemann which would require dismissal under the exhaustion requirement of 28 U.S.C. § 2254(b). *See Shea v. Heggie*, 624 F.2d 175 (10th Cir. 1980). We also agree that state parole board procedures and decisions are subject to federal judicial review.[1] As explained by the district court: "While it is not the function of a federal court to superintend the administration of a state parole system, and while the parole board must have a broad measure of discretion, its actions are still subject to established standards of review." Record, vol. 1, at 66.

Thus, we may review this decision of the parole board to determine if it was arbitrary, capricious or an abuse of discretion. *See Dye v. United States Parole Commission*, 558 F.2d 1376, 1378 (10th Cir. 1977).

 Schuemann first charges the Board with failing to establish and follow mean-

---

1. Although the district court recognized that federal judicial review was available, the court was uncertain whether the appropriate avenue for seeking such review was through a petition for habeas corpus or a § 1983 civil rights action. Record, vol. 1, at 66 n.1. We conclude that a habeas corpus proceeding is the proper mechanism for reviewing parole board actions if the remedy sought is release from confinement. As explained by the Supreme Court in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), habeas corpus, and not a civil rights action, "is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement." *Id.* at 490, 93 S.Ct. at.1836. On the other hand, a civil rights action under 42 U.S.C. § 1983 may be appropriate if the inmate is seeking damages or to require a readjustment of parole procedures. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

ingful criteria for granting parole. This argument clearly lacks merit. The notification form provided by the Board to parole applicants indicates the factors it considers:

1. Nature of crime(s) committed
2. Psychological reports
3. Pre-sentence reports
4. Post-conviction behavior
5. Sentence(s)
6. Amount of time already served
7. Risk (potential danger posed by inmate to self and others)
8. Efforts for self-improvement
9. Parole Plan (resources available to inmate upon release)
10. Results of previous rehabilitation/reintergrative [*sic*] efforts
11. Not available for interview
12. Other

Record, vol. 1, at 20. These factors may properly be considered in parole determinations. *Cf. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 16–18, 99 S.Ct. 2100, 2108–2109, 60 L.Ed.2d 668 (1979); *Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979). The statute does not require more specific criteria;[2] indeed parole determinations inherently do not lend themselves to concrete and identifiable standards. The Supreme Court has advised:

> The parole release decision . . . is . . . subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. . . .
>
> . . . . .
>
> . . . No ideal, error-free way to make parole release decisions has been developed; the whole question has been and will continue to be the subject of

experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior. Our system of federalism encourages this state experimentation.

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. at 9–10, 13, 99 S.Ct. at 2105.

■■■ Our discussion of Schuemann's first contention applies as well to his claim that the reasons given by the Board were vague, inadequate and not supported by the record. It would be discordant to require unduly specific and detailed reasons from a Board vested with a subjective, predictive, and experimental function. It is evident from the notice form sent Schuemann that the Board was concerned about the short time Schuemann had served for a serious offense. This is a sufficient and proper reason. *Cf. Loch v. Keohane*, No. 79–1206 (10th Cir. Nov. 27, 1979).

■■■ Schuemann next alleges that the Board improperly considered information relating to his overturned conviction for first degree murder and conspiracy to commit murder. In making predictive appraisals, parole boards should have available to them a wide panoply of information concerning the parole applicant. *See Billiteri v. United States Board of Parole*, 541 F.2d 938, 944–45 (2d Cir. 1976). In a federal parole setting, this court has approved parole board consideration of an overturned conviction as long as the reversal was not based on a finding of innocence. *Dye v. United States Parole Commission*, 558 F.2d 1376, 1379 (10th Cir. 1977). As the district court's opinion correctly indicates, the Colorado Supreme Court's reversal of Schuemann's original conviction was not based on a finding of his innocence, but on a trial court error in excluding a witness. *See People v. Schuemann*, 190 Colo. 474, 548 P.2d 911 (1976).

---

**2.** The Colorado parole statute does not circumscribe Board discretion although it gives some broad outlines for the Board to follow. Even when the statutory requirements are met, the Board "may" release the inmate, but is not compelled to do so. *See* Colo.Rev.Stat. § 17–2–201(3)(b) (1978).

Schuemann next challenges the lack of certain procedural protections, including access to parole files and appeal of right. A similar challenge was denied in *Shirley v. Chestnut*, 603 F.2d 805 (10th Cir. 1979), where this court held that access to parole files and other procedural rights are not constitutionally required under a parole statute which does not create a liberty interest. Like the Oklahoma statute considered in *Shirley*, the Colorado parole statute gives the Board broad discretion and does not require the granting of parole upon a showing of any particular facts. *See* Colo.Rev.Stat. § 17–2–201(3)(b) (1978). *Cf. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. at 11–12, 99 S.Ct. at 2106. Even if we were persuaded that some due process standards should apply under the Colorado system,[3] we would not require the Board to open its files or to provide direct appeal. A claimed right of access to parole files does not rise to the level necessary for federal relief. *See Cook v. Whiteside*, 505 F.2d 32, 34 (5th Cir. 1974). A requirement of direct appeal from a denial of parole would be burdensome and unnecessary, particularly in light of the discretionary nature of the Board's function and the fact that habeas corpus procedures are available to review abuses. Furthermore, we find Schuemann's objection to the changing of the tape at his hearing frivolous.

Schuemann's final argument is that by denying him parole after he had served twelve years of a 12-to-20-year sentence, the Board frustrated the sentencing court's intent and violated the Double Jeopardy Clause.[4] While we can envision parole board actions which would improperly invade the province of the legislature that enacted a sentencing statute and the court that applied it, we find no such abuse here. A parole board is not obligated to release an inmate at the end of his minimum term.

Because we find no merit in any of Schuemann's claims, we affirm.

**3.** For a discussion of the limited applicability of due process standards in granting parole, *see Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. at 8–16, 99 S.Ct. at 2104–2108.

**4.** For a discussion of the application of the Double Jeopardy Clause to sentencing, *see Cordova v. Romero*, 614 F.2d 1267 (10th Cir. 1980).