**Daniel D. MATZ, Appellant,**

v.

**William C. KELSCH; Duane L. Gourneau; Jo Ann Yocum; Irvin Riedman; James Marion; North Dakota State Board of Parole, Appellees.**

**No. 80–1842.**

United States Court of Appeals, Eighth Circuit.

Jan. 14, 1981.

Daniel D. Matz, filed appellant's brief pro se.

No appellees' brief was filed.

Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.

PER CURIAM.

Plaintiff-appellant Matz, an inmate in the North Dakota State Penitentiary, submitted a complaint, construed by the District Court and here as a civil rights complaint, primarily under 42 U.S.C. § 1983, alleging that the North Dakota State Board of Parole violated his due process rights in fixing the terms of his parole. Matz sought leave to proceed *in forma pauperis.* The District Court[1] granted leave to proceed *in*

---

1. The Honorable Bruce M. Van Sickle, United States District Judge, District of North Dakota.

*forma pauperis*, ordered the complaint filed, and, prior to service of process, dismissed the complaint for failure to state a claim upon which relief could be granted. Matz filed a timely appeal.

Appellees then filed a motion, under Eighth Circuit Rule 9(b), to dismiss the appeal for lack of jurisdiction. Their support for the motion is based on allegations of insufficiency of process and insufficiency of service of process. As this court clearly has jurisdiction over the appeal,[2] we deny appellee's motion.

The court may, however, on its own motion, summarily dispose of an appeal under Eighth Circuit Rule 9(a) when the questions presented do not require further argument. We believe the procedure laid out in Rule 9(a) is warranted here and we affirm the District Court's dismissal of the instant action.

Matz's four-year sentence of imprisonment commenced on November 6, 1979. The Parole Board considered his case in January 1980. It held a hearing on May 7, 1980, and ordered that Matz be granted parole on November 6, 1981. The order for parole also contained a proviso that defendant Matz be granted work-release commencing May 6, 1981, upon application and the condition that eighty percent of his earnings after institutional deductions be applied towards restitution.

Matz then filed a petition for a writ of habeas corpus in the state court, protesting the Board's imposition of a restitution condition on his work release opportunity as in violation of N.D.Cent.Code § 12–48.1–03.[3] A hearing was thus held by the Parole Board on July 8, 1980, to reconsider the original May 7, 1980, order and determine whether that order should be vacated and set aside, modified, corrected, or reinstated.

After the hearing, at which Matz was present, the Parole Board modified its May 7 order to declare null and void that portion of the order approving work release. The Board also ordered that Matz's actual release date remain November 6, 1981, and that restitution in an amount to be determined at a future hearing, upon due notice to Matz, be a condition of the parole.

In his complaint filed below, Matz sought declaratory and injunctive relief, and damages, for the allegedly unlawful deprivation of his federally protected constitutional rights, specifically his right to due process. Matz's complaint, when liberally construed, objects to the Board's withdrawal of work release opportunity.

It is highly doubtful that Matz's interest in participating in the work release program, provided for in N.D.Cent.Code § 12–48.1–01, rises to the level of a constitutionally protected liberty interest.[4] However, we are not forced to decide that issue here.

2. The District Court's order dismissing the complaint for failure to state a claim was a final judgment under 28 U.S.C. § 1291. The court had the power to dismiss the action prior to service of process. As this court stated in *Cline v. Herman*, 601 F.2d 374, 376 (8th Cir. 1979):

Under 28 U.S.C. § 1915(d), a complaint filed *in forma pauperis* may be dismissed prior to service of process only if the action is "frivolous or malicious." *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). *See Remmers v. Brewer*, 475 F.2d 52, 53 n.1 (8th Cir. 1973).

Failure of a complaint to state a claim for which relief can be granted renders that complaint frivolous within the meaning of § 1915(d). *United States ex rel. Walker v. Fayette County, Pa.*, 599 F.2d 573, 575 (3d Cir. 1979).

3. Section 12–48.1–03. *Use of funds earned on work release.*—The plan for the inmate shall provide that any funds earned in outside employment will be used in the following order: for necessary expenses of the inmate, including room and board costs of the institution; court costs or fine; restitution if a part of the sentence; necessary support of dependents; and credited to inmate's personal account to be paid him on release.

4. To obtain a right protected by the due process clause of the Constitution, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), *cited with approval in Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). In *Greenholtz*, the Supreme Court declared that the

We find that the procedure followed in determining Matz's parole status was eminently fair and that the procedure would have complied with the due process standards set out in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), even if those standards were applicable here.[5]

Matz was afforded plenary hearings and given sufficient advance notice of the hearings at each important stage in the Board's decisional process concerning the conditions of his parole. He was allowed to appear personally before the Board at each of these hearings, and was given the opportunity to be represented by counsel at his own expense. Even if we were persuaded that some due process standards should apply under the North Dakota work release statute as it was applied to Matz's case, we find that those standards were satisfied here.

Appeal dismissed.

"mere hope" of future freedom is insufficient to invoke due process. *See* 442 U.S. at 11, 99 S.Ct. at 2105. The prisoners in *Greenholtz* argued that "the ultimate interest at stake both in a parole-revocation decision and in a parole determination is a conditional liberty and that since the underlying interest is the same the two situations should be accorded the same constitutional protection." 442 U.S. at 9, 99 S.Ct. at 2104. The Court rejected this argument and drew a "crucial distinction" between being deprived of a liberty one has and being denied a conditional liberty that one desires. *Id.* The decisive inquiry in cases involving the due process rights of prisoners in parole proceedings, therefore, is, at what point does the *likelihood* of enjoying a certain freedom become sufficiently great to vest the prisoner with a protected liberty interest in it under the fourteenth amendment. *See Dumschat v. Board of Pardons, State of Conn.*, 618 F.2d 216, 217 (2d Cir. 1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 266, 66 L.Ed.2d 127 (1980). Though this area of the law is as yet unsettled, cases since *Greenholtz* have found that the likelihood of enjoying certain "freedoms," whether by pardon, parole, social furlough, halfway house programs, work release, or otherwise may be derived from the Constitution itself, state statutes, or official policies or practices. *See, i. e., Hayward v. Procunier*, 629 F.2d 599 (9th Cir. 1980); *Averhart v. Tutsie*, 618 F.2d 479 (7th Cir. 1980); *Dumschat v. Board of Pardons, State of Conn., supra; Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980). In the instant case, it appears that the likelihood of Matz

receiving work release was never more than a possibility or a "mere hope." Under N.D.Cent. Code § 12–48.1–01, the director of institutions has complete discretion with respect to participating in work release programs, and under N.D.Cent.Code § 12–48.1–02, the warden has discretion to determine which inmates shall be eligible for such programs when they do exist. There is no duty, statutory or otherwise, to exercise these powers. When the Parole Board exercised its discretion to grant a work release opportunity to Matz, it did so on the express condition that Matz make restitution at the rate of 80 percent of his earnings. It is doubtful that the right to work release, therefore, ever sufficiently vested in Matz, as Matz refused to embrace or accept the conditions of the conditional prospective work release.

5. It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.' * * * The function of legal process, as that concept is embodied in the Constitution, and in the realm of factfinding, is to minimize the risk of erroneous decisions. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. at 12–13, 99 S.Ct. at 2106 (citations omitted).